The next matter on the docket is Eden Place v. Sholem Perl, and we have only one appearance. Mr. Richards is the only lawyer. It's unusual for us to have a one-sided case, but here we are. I'll try to argue their side, too. Well, it happens more often than you might imagine. Good morning, Your Honors. I may please the Court. It's fantastic that after 26 years – State your name. Oh, sorry. Ronald Richards for the appellant. Thank you. It's fantastic after 26 years that we finally have a case that's gone all the way up to a circuit court of appeals dealing with a massive epidemic across the United States where there's a bevy of frivolous filings that are enacted after the state court issues a judgment for possession. So is that why your client is spending the money to do this? Because I guess I'm having trouble seeing how your client is aggrieved at this particular moment by the order that you're appealing from. So help me understand. What skin in the game does your client have now? Well, they have the potential that if the case goes back to the bankruptcy court, they could be hit with – The case is closed. It's been closed for, what, over a year now? Nothing's going to happen at this point. Two years. Two years. Okay. So in all likelihood, right, at this moment, the risk, if that's what you're posing it as, that your client is going to be hit with some kind of, what, punitive damages award? Well, the bankruptcy court did reserve the issue. So even though the case is closed, they have jurisdiction. Your 28-J letter was – I hadn't focused on the 105 versus 362 distinction that you drew. And the bankruptcy court did not reserve jurisdiction over any 105 issues. That seemed to be your best attempt to distinguish away, I guess, what we had alluded to in – was it Dyer and maybe another case? Yeah. You come back and say, oh, well, that's not this case because here we're solely – the request was solely under 105, and that's not one of the sections of the bankruptcy code that the bankruptcy judge reserved jurisdiction over. Yeah, he reserved the remedies. Under 362, but you're saying that that wasn't invoked here. It was just under 105. It wasn't invoked, but he did – I believe that if the case went back, that the debtor would then try to seek remedies under 105. Sitting here today, your client is not aggrieved at all sitting here today, right? Well, they are – let me tell you why. I'm going to answer that question because I just – we've got sidetracked for one sec. They are aggrieved because they have – they were found to violate an automatic stay, and that is a negative finding, number one. And they have the potential – the debtor is very litigious. There's still an active state court case against the bank. We were able to win on a demur, which was sustained, but then the debtor tried to undo that. But the case against us was finally dismissed. The – the – At least in the Seventh Circuit, there are clear holdings that a claim for a willful violation of the stay survives the termination of the bankruptcy because of the potential for a future – a future sanction and that there is no statute of limitations for reopening. So your position is supported in the Seventh Circuit. Our circuit has never decided that. I will tell you the – As to whether it's moot or not moot. The BAP raised this issue, and we briefed it, and there was an OSC, and the motion panel found that we were subject to risk of economic harm, and we – that's why the case went forward. But to answer your question, you know, with these cases, it's funny, the cases that affect the most amount of people sometimes never get to a court that can actually make a ruling that actually covers the amount of people. So, yes, our client is very passionate about finally getting this case out of the bankruptcy realm because it's – there's a division in the bankruptcy court. Some follow Smith. Some follow Butler. And the case really never went up to even the BAP. Then we got to the BAP. The BAP misunderstood Williams completely, which was a case where a debtor was playing cute and gave the house to his girlfriend as the recorded title to stop an HOA foreclosure but kept an unrecorded quick claim back to the debtor. So that case, there was clearly – there was no possession issue, and that was, in my opinion, the BAP just made a mistake. Your client is, beyond this one case, your client is a repeat victim of these kinds of schemes. Is that what you're saying? I would say that my client or generally the principals, you know, that buy properties at foreclosure sales repeatedly get victimized by – it's not just this one client. I would say a lot of our firm clients get victimized by after there's extensive litigation in the state court, a full trial, vigorous motions. They win the case. They go to the sheriff. They pay the fees. And on the way to the lockout, there's a frivolous Chapter 7 or Chapter 13. And that's unfair because California enacted a comprehensive statutory scheme, 715.050 CCP, and appellate court Lee v. Baca upheld the scheme. And California knows how to deal with these property interests. And I think it's outrageous that these debtors are victimized by unscrupulous bankruptcy attorneys that say, hey, I'll delay this. And because of the budget cuts in the L.A. Superior Court and the sheriffs, these games add another two months to the lockout because then you have to run back to the bankruptcy court. And a lot of these people that buy properties at sales or if there's a trespass in your house, it would lead to absurd results. Not everybody that buys properties in the nonjudicial foreclosure market is wealthy. They're midsize and small business people that buy these properties. I have one more question about the mootness issue before we dive into some other things. And that is, am I correct in understanding that your client no longer owns this property that's in question? I don't believe they own it at this time. So does that affect the prospect of future sanctions in any way? None at all, Your Honor, because the conduct is judged at the time of the acts. You can't avoid a contempt simply because you get rid of the property. And like I said, they wouldn't spend the time and resources if they weren't concerned about it. They're also offended that they were held in contempt when they were or potentially. That's not a basis for jurisdiction on appeal. That's, I guess, my fundamental problem with you being here. Nothing personal. I mean, I understand why your client and others in the industry have a real strong interest in getting this issue resolved at the circuit level. Don't mistake me there. All right. I just view your client as being in the position of having basically won most of the relief that it wanted at the hearing because I think the order actually is styled as an order granting relief from the stay going forward. It just made this retrospective finding that your client obviously doesn't like and maybe its feelings were heard. But we don't have jurisdiction as an appellate court to review adverse findings that are not connected to some concrete, you know, adversity that's imposed on your client. Here there is none. If and when, and I doubt it will ever happen, your client is tagged with some kind of concrete harm flowing from that past finding, of course at that point your client could appeal, but you can't appeal now. I mean, I don't see any support in case law from any circuit, including the seventh, that would allow an appeal right now. Well, let me tell you, we addressed it in our 28-J letter. We cited Bundanich versus Becton. And the fact is that we don't need to wait until we get, quote, tagged, using your word, Your Honor, because the authority is very clear that attorney's fees, which is what the debtor sought below, is a collateral issue. We have a harm now. We were found to have violated the automatic stay, and that could be waved around in every future bankruptcy court. That could be used to enhance knowledge or intent. So it's not simply whether we have a theoretical harm. Eat in place was found to violate the stay. That's a very bad negative in this case. It's a negative to all the parties. And it's not fair to eat in place to say, hey, well, let's see what happens in the future, because we cited in our 28-J that these collateral things like attorney's fees are still a final order. But the reason those cases are different is because some concrete adversity was imposed on the defendant, let's call the person. And what was separate was this, well, there might be additional attorney's fees added on. And what the courts there held is that we don't have to wait for the attorney's fees issue to be settled, to be resolved before we decide whether the concrete adversity that already was imposed was right, right, or wrong. And here there is zero concrete adversity that was imposed on your client, other than maybe this reputational hit that your client took by this adverse finding. But it's not connected to anything that the judge imposed on you. So that's, to me, my problem. You have five minutes. You should probably shift to the merits, because my colleagues may well disagree with me. Yeah, I'd appreciate your doing that with Judge Watford's good grace. I appreciate that. Because I want to be sure I understand your position on the merits. And I think if I read it correctly, it's a fairly simple proposition, which is that under California law, in the circumstance here where there's been a state court adjudication of the unlawful detainer, that the debtor had zero legal interest in the property and zero equitable interest in the property, and therefore the automatic stay simply has no application. Is that the long and short of it? That's correct. And we want a bright-line rule that in trespasser, squatter, or foreclosure cases, that once the state court has rendered a judgment of possession, that there is no reason for the creditor to have to go back to court and get relief from the stay. It's inviting tremendous abuse in the bankruptcy system. Even in the case that Your Honors referred me to, Blalock, it was in the footnote. Even in that case, the judge commented it on footnote nine, that the number of cases in this district has exploded. The dismissals for failure to prosecute after the creditor action, i.e. share sale, has been blocked is distressing. That's in the case that you, that the clerk. That goes the other direction from where you want to go ultimately. Ultimately, but that case also cited Sinclair, which I think the best line in that case of Sinclair is the goal is not achieved by applying the stay to a purchaser's attempt to obtain possession of a residential real property wrongly being held from the debtor, former owner where the debtor has no good faith, colorable claim to possession, and the right to possession is not in dispute. And that's at the Sinclair case on 667 that the court clerk asked us to look at. The issue is simply that California's created a scheme to monitor and regulate their sheriffs that they've decided that it is simply not a property right to be protected and that that's a determination to obviously stop the abuse. Another bankruptcy abuse that California did which was cited is they enacted 2924H where on the date of the sale, as long as the deed is recorded within 15 days, it reverts back to the date of the sale. That's because people were running to the courthouse after they had their property sold but before the deed was recorded. So California ended that type of abuse as well. And I think that if we adopt a bright line rule related to these type of cases, especially the facts of this case, it's going to end this abuse of filing and this advantage that's being taken of these debtors that really only buy themselves a month or two and they spend thousands of dollars on these legal clinics where then their cases always get dismissed like in this case where they don't file schedules and the bankruptcies are just a complete fraud. It also causes what's called property dumping. There was no finding of fraud in this case, right? No, because they were dismissed for failure to appear at the 341A. Your position, as I understand it, doesn't depend on a finding that the bankruptcy was fraudulent or in bad faith. Not at all. Not at all. It depends entirely on the analysis of whether the automatic stay applies at all because there is no property interest. So it's kind of off on a different topic. That's correct. And even in one of the cases that was cited by the court in footnote 3 in Sinclair, it actually said it has been stated that a naked property possession vests a substantial right to hold land except against the true owner. In this case, we had, we were relying on the California Supreme Court in T.D. versus Biancalana where once the deed is recorded, it's conclusively presumed that the sale has been conducted correctly and the client is a bona fide purchaser and they own title. The state court decides all these issues in the unlawful detainer proceeding. They look at notice and title. This was already been done. So what's the point of going to the bankruptcy court? There's nothing for the court to do. And in addition, it encourages property dumping where people keep LLCs and entities in like a Chapter 13 or a Chapter 11 and they grant deed the property into these bogus entities and it just creates a cycle of fraudulent and fictitious filings that this is going to eliminate because once it goes and there's a state court judgment for possession, we're not going to have any more, we're going to have a clear rule to follow and I think it will benefit everybody and you won't have an unstable position in the law. It's not really fair to a practitioner where half the bankruptcy court follows Smith and half follows Butler. That's mixed up. And my client should be commended for following through and spending the resources to get the case to the appellate department. I was surprised, frankly, at the BAP argument when they cited Williams because nobody cited it in their briefs and as I pointed out in the beginning, that was a case where there was no judgment for possession and there was no issue. And by the way, on the Blalock case which Judge Graber commented on, that case there was a tendency at sufferance and that's a different type of property. Here we have a straightforward foreclosure where the party that's in possession is labeled a squatter under California law and they cannot assert any rights against the true owner even if they try to assert a right against a third party. It has to be with the consent of the owner, none of which was present here. And I would urge the court to not have this case leave and actually make a ruling that's going to be beneficial to both the debtors and the creditors that practice in the central district. Thank you, Counsel. The case just argued is submitted and we appreciate your argument. Thank you. I can't say both counsel as I often do. To my counsel on the respondent side, you did a great job. Well, sometimes those are the best arguments.
judges: Graber, Rawlinson, Watford